IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA DELGADILLO,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | § | NO. EP-12-CV-00264-ATB |
| | § | (by consent) |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,[1]<br>　　　Defendant. | §<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties have consented to trial on the merits before a United States Magistrate Judge. The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

### I. PROCEDURAL HISTORY

Plaintiff Maria Delgadillo filed her applications for DIB and SSI on May 21, 2010, alleging disability since December 1, 2008, later amending her onset date to February 6, 2010.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

(R. 50, 135, 140).[2]  Plaintiff's application was initially denied on August 5, 2010, and then again denied upon reconsideration on November 1, 2010.  (R. 59, 67).  Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ") and a video hearing was held on July 26, 2011, at which Plaintiff and a vocational expert testified.  (R. 25-52).

On August 25, 2011, the ALJ issued a decision finding that Plaintiff had the following severe impairments: diabetes mellitus, obesity, bilateral diabetic retinopathy, status post panretinal photocoagulation, and status post vitreous hemorrhage with neovascular glaucoma and loss of vision in the right eye.  (R. 12).  The ALJ assessed Plaintiff as having the residual functional capacity to do light work with the following limitations:

> [S]he cannot do work requiring a normal field of vision or normal depth perception. The range of vision in the good eye is mainly limited by the nose. Otherwise, she can do work requiring normal near or far vision with the one good eye. She cannot be exposed to hazards such as unprotected heights, moving mechanical parts, and cannot operate motorized vehicles.

(R. 13).  Based on this residual functional capacity and vocational expert testimony, the ALJ found that Plaintiff retained the ability to perform her past relevant work as a sales clerk, cake decorator, inspector/sorter, and waitress, so she was not disabled.  (R. 18-20).  In the alternative, the ALJ found that Plaintiff was also not disabled because, based on her age, education, work experience, residual functional capacity, and the vocational expert testimony, Plaintiff could perform other work that exists in significant numbers in the national economy, specifically as a bench worker, greeter, teacher's aide, or optical assembler.  (R. 19-20).  Plaintiff's request for review was denied by the Appeals Council on May 8, 2012.  (R. 1-6).

---

[2] Reference to court documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])."  Reference to the record of the administrative proceedings is designated by "(R. [page number(s)])."

Plaintiff filed her complaint on July 9, 2012, seeking review of the ALJ's decision. (Doc. 5). The Commissioner filed her answer on September 25, 2012. (Doc. 18). That same day, a transcript of the administrative proceedings was filed. (Doc. 20). On October 30, 2012, Plaintiff filed her brief in support of reversing the Commissioner's decision and remanding for an award of benefits or, alternatively, for additional administrative proceedings. (Doc. 23). On November 29, 2012, the Commissioner filed her response in support of the ALJ's decision. (Doc. 24). The case was then reassigned to this Court on December 6, 2012. (Doc. 25).

## II.  FACTUAL BACKGROUND

Plaintiff was born on February 6, 1960, making her fifty-one years old at the time of the ALJ's decision. (R. 30). She graduated from high school and can speak, read, and write English. (R. 30, 151). She has previous work experience as a waitress, cook, sales clerk in retail, sewing machine operator, cake decorator, caretaker, and inspector/sorter. (R. 45, 153, 161, 193). Her longest held job was as a sewing machine operator. (R. 153, 161). She reported that she can no longer work due to diabetes, glaucoma, and joint and muscle pain. (R. 152). She also testified that she suffered from pain throughout her body and experienced swelling of her feet. (R. 32). Plaintiff reported not being able to grip anything and having poor vision. (R. 32, 35-37). Plaintiff estimated that she could only walk one block before running out of breath and needing to sit down and rest for about five minutes. (R. 40-41). She also testified that she could only stand for five minutes at a time and lift no more than eight pounds. (R. 41-42). Plaintiff reported that she did her own grocery shopping once a week and left the house twice a week. (R. 172). She also reported that she could no longer drive herself and needed assistance dressing and showering. (R. 180). Plaintiff testified that she used a cane prescribed to her by her primary

doctor and frequently took naps throughout the day.[3]  (R. 34, 43-44).   Plaintiff reported taking a number of medications to manage her diabetes, cholesterol, pain, and glaucoma.  (R. 179, 188, 192).   Plaintiff also complained of side effects brought upon by her medication, including dizziness, nausea, and disorientation.  (R. 43).

### III. ISSUES

Plaintiff presents the following issues for review:

1.  Whether the ALJ committed error by omitting a sit/stand option when determining Plaintiff's residual functional capacity.  (Doc. 23:4).

2.   Whether the ALJ's residual functional capacity determination was supported by substantial evidence when it failed to account for Plaintiff's use of a walking cane.  (Doc. 23:6-7).

### IV.  DISCUSSION

**A.**     **Standard of Review**

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of

---

[3] Juanita J. Capouch, the individual identified by Plaintiff as her primary doctor, is actually a nurse practitioner, and not a physician.  (R. 399).

credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–344 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues de novo. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983) (per curiam)). "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995). If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360. Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

**B.      Evaluation Process**

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). In determining disability, the ALJ makes his findings according to a sequential five-step evaluation. 20 C.F.R. § 404.1520; *Id.* § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition or his age, education, and work experience. 20 C.F.R. § 404.1520(b); *Id.* § 416.920(b).

The ALJ then determines under the second step whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Id.* § 416.920(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. Any application of this standard will be presumed

incorrect unless "the correct standard is set forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to [the regulation] is used." *Id.* at 1106.  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 404.1520(c); *Id.* § 416.920(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors.  20 C.F.R. § 404.1520(d); *Id.* § 416.920(d).  If the claimant does not qualify under the Listings, the evaluation proceeds forward.  20 C.F.R. § 404.1520(e); *Id.* § 416.920(e).

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity, which is the claimant's maximum work capability.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 404.1520(e); *Id.* § 416.920(e).  The ALJ then proceeds to step four and uses the claimant's residual functional capacity to determine whether the impairment prevents the claimant from performing his past relevant work.[4]  20 C.F.R. § 404.1520(f); *Id.* § 416.920(f).  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  20 C.F.R. § 404.1520(f); *Id.* § 416.920(f).

If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability to do other work given his residual capacities, his age, education, and work experience.  If an individual's impairment precludes him from performing any other type of work, he will be found to be disabled.  20 C.F.R. § 404.1520(g); *Id.* § 416.920(g).

---

[4] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 416.960(b)(1).

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. *Selders v. Sullivan*, 914 F.2d at 618 (5th Cir. 1990).; *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). The Commissioner must demonstrate that other work exists in significant numbers in the national economy that the claimant can do given the claimant's residual functional capacity, age, education, and work experience. *Id.* at 1153. If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Anderson v. Sullivan*, 887 F.2d at 632.

C.   **The ALJ's Decision**

The ALJ issued a decision on August 25, 2011. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 6, 2010, the amended alleged onset date.[5] (R. 12). At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, obesity, bilateral diabetic retinopathy, status post panretinal photocoagulation, and status post vitreous hemorrhage with neovascular glaucoma and loss of vision in the right eye. (R. 12-13).

---

[5] The Plaintiff initially alleged disability beginning December 1, 2008, but amended her alleged onset date to February 6, 2010, to coincide with her 50th birthday.

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment in 20 C.F.R. § 404.1520(d) and § 416.920(d) under step three. (R. 13).

Next, the ALJ determined that Plaintiff has the residual functional capacity to perform the full range of light work, with the following limitations: (i) she cannot perform work requiring a normal field of vision or normal depth perception; (ii) her range of vision in her good eye is mainly limited by the nose, otherwise she can do work requiring normal near and far vision with the good eye; (iii) she cannot be exposed to hazards such as unprotected heights or moving mechanical parts; and (iv) she cannot operate motorized vehicles. (R 13-18).

Based on the residual functional capacity finding and vocational expert testimony, the ALJ concluded at step four that Plaintiff could perform her past relevant work as a waitress, sales clerk, cake decorator, and inspector/sorter. (R. 18). In the alternative, the ALJ found that based on Plaintiff's age, education, work experience, residual functional capacity, and vocational expert testimony, Plaintiff can perform other jobs that exist in significant numbers in the national economy, specifically as a bench worker, greeter, teacher's aide, or optical assembler. (R. 19-20). Because the ALJ believed Plaintiff was capable of performing her past relevant work or other work that exists in significant numbers in the national economy, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 20-21).

## V.  ANALYSIS

Plaintiff contends that the ALJ's residual functional capacity finding is not supported by substantial evidence. In particular, Plaintiff alleges that the ALJ omitted a sit/stand option when determining Plaintiff's residual functional capacity. (Doc. 23:4). Plaintiff also argues that the residual functional capacity determination was not supported by substantial evidence because it

failed to reflect all of Plaintiff's limitations. (Doc. 23:6-7). Specifically, Plaintiff alleges that the ALJ failed to include limitations related to Plaintiff's use of a walking cane. (Doc. 23:6-7).

A.  **The ALJ's Residual Functional Capacity Finding is Supported by Substantial Evidence Despite Its Omission of a Sit/Stand Option**

The ALJ determined that Plaintiff has the residual functional capacity to perform limited light work.

> Light work activity is defined as work, which involves lifting of no more than 20 pounds occasionally, and up to 10 pounds frequently. The full range of light work requires standing, and walking for up to six hours during an eight-hour workday and sitting intermittently during the remaining time. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. "Frequently" means occurring from one-third to two-thirds of the time, and would generally range from about two hours to approximately six hours total in an eight-hour workday.

20 C.F.R. § 404.1567; *Id.* § 416.967(b). The ALJ found Plaintiff could perform light work except she cannot do work requiring a normal field of vision or normal depth perception or be exposed to hazards such as unprotected heights, moving mechanical parts, or operate motorized vehicles. (R. 13).

Plaintiff asserts that the ALJ's failure to include a sit/stand option in the residual functional capacity assessment is legal error that requires remand for further administrative proceedings, or alternatively, a finding of disability. (Doc. 23:3-6). Plaintiff acknowledges that no medical opinion stated a requirement for the option but Plaintiff contends that the medical record in evidence and Plaintiff's testimony support including the limitation. (Doc. 23:4-6).

The Commissioner responds that substantial evidence supports the ALJ's residual functional capacity determination. (Doc. 24:4). First, the Commissioner argues that the objective medical evidence does not support the alleged functional limitation. (Doc. 24:5).

Moreover, the Commissioner states that Plaintiff's own statements support the ALJ's determination to not include a sit/stand option. (Doc. 24:6).

As a preliminary matter, the Court stresses that the relevant question for review is whether the ALJ's decision is supported by substantial evidence, not whether the record contains evidence to support a sit/stand option. *See Navarro v. Colvin*, No. A-12-CV-040-LY-AWA, 2013 WL 1704795, at *3 (W.D. Tex. Apr. 19, 2013) (citing *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997)). The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues *de novo*. *Newton,* 209 F.3d at 452. Conflicts in the evidence are for the Commissioner and not for this Court to resolve. *Spellman*, 1 F.3d at 360.

In support of her claim, Plaintiff's brief focuses solely on the evidence that supports including a sit/stand option in her residual functional capacity determination while ignoring the evidence cited by the ALJ that does not support the option. Plaintiff points out that she reported joint pain to various doctors. (R. 199, 202, 207). She also reported various muscle pain, back pain, and leg pain. (R. 152, 169, 170, 177, 185). During a May 2009 physical examination, Plaintiff complained of pain radiating to her back. (R. 237). A May 30, 2009, bone survey revealed advanced degenerative disc disease at L4-L5 with disc space narrowing and spurring. (R. 253). At the ALJ hearing, Plaintiff testified that she stopped working because she had been feeling bad, her body hurt, things were falling from her hands, and she could not stand for very long because her feet would swell. (R. 32). Plaintiff also stated that she experienced back pain and needed a cane or had to lean against a wall after standing for no more than five minutes. (R. 40-41). Plaintiff also testified that she is five-feet-tall and two-hundred forty-four pounds and as

a result of her weight and other conditions, she could walk only about a block before stopping to take a break due to shortness of breath.[6] (R. 37-38, 40).

Plaintiff states that she is required to show only that there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or support the symptoms alleged, and she does not have to produce objective evidence of the pain itself or its severity. (Doc. 23:5) (citing 42 U.S.C. § 423(d)(5)(A)). However, the section of the statute cited by the Plaintiff relates to the need for objective evidence to support a subjective complaint of pain or other symptoms. *See* 42 U.S.C. § 423(d)(5)(A). Simply producing objective evidence supporting the existence of an underlying impairment that could be reasonably expected to produce the symptoms alleged does not alone establish the existence of an underlying impairment. The ALJ must still consider the entirety of the record when making his determination, and decide what weight to accord the various medical reports. *Johnson v. Bowen*, 864 F.2d at 347. This Court in turn must determine whether the ALJ's determination is supported by substantial evidence. *Myers v. Apfel,* 238 F.3d at 619.

It is clear from the ALJ's opinion that she took into account all of Plaintiff's medical history and subjective complaints when making the residual functional capacity determination. (R. 13-18). The ALJ noted that despite Plaintiff's claim that she is very limited by joint pain and back pain, she has not received treatment or been recorded to have significant need for such care.

A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction

---

[6] According to her testimony, Plaintiff's BMI (Body Mass Index) would be 47.6, qualifying her as severely obese.

with the medical reports to discount plaintiff's complaints of disabling pain or other limitations. *Anthony v. Sullivan*, 954 F.2d 289, 295-296 (5th Cir. 1992); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  On May 27, 2009, Dr. Murray V. Vann observed full strength in Plaintiff's extremities without edema, and no abnormalities of her musculoskeletal system.  (R. 235).  Dr. Nathan Hancock examined Plaintiff on May 6, 2010, and noted no tenderness in Plaintiff back, normal strength in her extremities, and a "steady gait" (no use or need for an assistive device is indicated). (R. 244, 248).  Plaintiff did not take that opportunity to report or complain about any pain that she might have been experiencing in her back or body.  (R. 390).  On August 3, 2010, Dr. Leigh McCary reviewed Plaintiff's medical records and determined that the record was insufficient to determine the extent of Plaintiff's vision issues and the full range of motion of her joints.  (R. 352).  Dr. Mary Jo Hernandez also reviewed Plaintiff's records on October 26, 2010, and concluded that the allegations as to the Plaintiff's medically determinable impairments of glaucoma, diabetes mellitus, and diabetic retinopathy are only partially supported by the evidence on record and that the allegations are only partially credible.  (R. 353).  On August 24, 2010, when Plaintiff was evaluated for gallstones, her physical examination revealed good peripheral pulses and no edema of the lower extremity, with good range of motion and sensation.  (R. 364-365).  On April 5, 2011, Plaintiff was examined by Dr. B. Davis following gallbladder surgery, and Plaintiff described herself as "doing well," and "feel[ing] fine."  (R. 16, 359).  Plaintiff also confessed to not taking her pain pills.  (R. 16, 359).

      While an ALJ must take into account a claimant's subjective allegations of pain in determining her residual functional capacity, the claimant must produce objective medical

evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. *Id.* The ALJ reviewed the evidence and concluded that Plaintiff's testimony concerning the severity of her back and body pain was not credible to the extent that Plaintiff's residual functional capacity determination required a sit/stand option. (R. 18). Thus, the ALJ found the objective medical evidence more persuasive than Plaintiff's testimony at the hearing, which is "precisely the kind[] of determination[] that the ALJ is best positioned to make" as the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In her opinion, the ALJ stated, and this Court's review of the record confirmed, that no physician placed any functional limitation on Plaintiff related to her back or her joints. (R. 17-18). Citing to the regulations at 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2), the ALJ noted that objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of an individual's symptoms and the effects those symptoms may have on the individual's ability to function. The absence of findings such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption can detract from the credibility of a claimant's allegations about pain and other symptoms and their functional effects. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citation omitted) (the lack of physician-assessed limitations substantially supports the ALJ's decision). The ALJ cited to Plaintiff's lack of these findings in the medical records to support his functional findings. (R. 17). In fact, the ALJ acknowledged that the Plaintiff's obesity was severe and attributed some of her complaints of

back and body aches/pain to it but concluded that they only precluded Plaintiff from performing medium or heavier work.  (R. 18).

The objective medical evidence provides substantial evidence supporting the ALJ's opinion, and refutes Plaintiff's allegation that the ALJ committed error by failing to include a sit/stand option for her.  The ALJ was not required to submit the limitation to the vocational expert in his hypothetical question because he determined it was unnecessary.  *See Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994) (the ALJ must submit a sit/stand limitation to a vocational expert when he determines it is needed); *see also Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (a hypothetical submitted to the vocational expert is defective if it fails to incorporate reasonably all disabilities of the claimant recognized by the ALJ).

After examining the record and the ALJ's opinion, the Court finds substantial evidence supports the ALJ's residual functional capacity finding with respect to this claim.

**B.**     **The Commissioner Did Not Err By Failing to Account for Plaintiff's Use of a Cane**

Plaintiff argues that her need to use a cane while walking should have been included in the ALJ's residual functional capacity determination.  (Doc. 23:6).  Failure to do so, she states, is legal error.  The Court disagrees and concludes that the ALJ properly excluded Plaintiff's cane use.

During the ALJ hearing, Plaintiff testified that the use of a cane was prescribed by her "doctor," Juanita Capouch, but there is no indication in Capouch's report that the use of a cane was prescribed nor is there any reference to the use of a cane.[7]  (R. 34).  Plaintiff stated that she

---

[7]  As a nurse practitioner, Capouch is not considered an "acceptable" medical source under the regulations.  *See* SSR 06–03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than

has to use a cane to maintain equilibrium and to prevent herself from falling. Plaintiff also testified that she can only stand for about five minutes and has to "go to the wall or something" for support, and she also experiences dizziness as a side effect of her medication. (R. 41, 43). Plaintiff further testified that she cannot stand for very long because her feet swell and she experiences intermittent back pain. (R. 32, 34). She also reported experiencing joint and muscle pain, back pain and leg pain. (R. 152, 169, 170, 177, 185). In his written opinion, the ALJ recognized that Plaintiff is obese and has advanced degenerative disc disease at L4-L5 with disc space narrowing and spurring. (R. 253).

In response, the Commissioner states that there is no evidence in the record supporting Plaintiff's claim that she was ever prescribed or instructed to use a cane by a medical provider. (Doc. 24:7). However, the regulations do not require that the claimant be prescribed the use of a cane, only that she provide medical documentation establishing the need for the device. Social Security Ruling 96–9p states in pertinent part:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

1996 WL 374185, at *7 (S.S.A. July 2, 1996). *See also Coleman v. Astrue*, No. 3:10-CV-1919-BD, 2011 WL 6182338, at *3 (N.D. Tex. Dec. 13, 2011).

---

medical doctors).

The Commissioner also contends that there is no objective medical evidence supporting Plaintiff's complaints. (Doc. 24: 7). In this case, Plaintiff's testimony constitutes the majority of the evidence in the record supporting the use of the cane. Subjective complaints must be corroborated, at least in part, by objective evidence. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (citing *Harrell v. Bowen*, 862 F.2d at 481). Plaintiff testified at the hearing that her use of a cane had been prescribed to her but there was no objective medical evidence supporting these claims. The ALJ did find that Plaintiff's obesity could affect Plaintiff's functional limitations, such as standing, walking and balancing, and that it could be contributing to her complaints of back and body pains but not to the full extent alleged by the Plaintiff. (R. 18). The ALJ also found that Plaintiff had not shown motor, sensory, or reflex deficits, and no physical examination supported Plaintiff's claim of severe limitations related to lower extremity swelling. (R. 17). At least one physician noted Plaintiff's "steady gait" on May 6, 2010, and none included any observations that Plaintiff used an assistive device. (R. 248). In sum, the ALJ recognized that Plaintiff suffered some limitations as a result of her conditions, but found that her allegations are generally inconsistent with the objective medical evidence and are credible only to the extent that they are consistent with the medical evidence of record. (R. 18).

The ALJ is responsible for assessing the credibility of testimony and his assessment is entitled to considerable deference. *Falco v. Shalala*, 27 F.3d at 163-164; *Newton v. Apfel*, 209 F.3d at 459. The ALJ conducted a detailed evaluation of the medical evidence and provided an evaluation of Plaintiff's testimony. (R. 13-18). Furthermore, the regulations require objective medical documentation apart from a claimant's subjective complaints in order to support the use of a cane. Because there was no medical documentation establishing claimant's need for a hand-

held assistance device to aid in walking or standing, the Court finds substantial evidence supports ALJ's residual functional capacity finding with respect to this claim.

## VI.  CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence.  Based on the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SIGNED** and **ENTERED** on September 17, 2013.

_____
ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE